[Civ. No. 19420. First Dist., Div. One. May 22, 1961.]

EUGENE D. SWEETLAND et al., as Trustees, etc., Appellants, v. FRANCHISE TAX BOARD, Respondent.

Everett S. Layman, Kenneth S. Carey, Everett S. Layman, Jr., and Arthur J. Lempert for Appellants.

Stanley Mosk, Attorney General, Ernest P. Goodman, Harry W. Low and John J. Klee, Jr., Deputy Attorneys General, for Respondent.

HOYT, J. pro. tem.*—This is an appeal from a judgment after trial by the court sitting without a jury in favor of defendant on plaintiff's complaint for refund of state income taxes allegedly overpaid. In this case Ernest J. Sweetland was

*Assigned by Chairman of Judicial Council.

the taxpayer. He moved from Hazelton, Pennsylvania, where he had been a resident, to California in August or September 1928. From September 1928 to the time of his death he was a resident of California and filed his personal income tax returns on a calendar year basis. In his California personal income tax for the year 1938 which was filed September 15, 1939, taxpayer reported a gain on the dissolution of Hazelton Corporation (hereafter called Hazelton) on December 29, 1938, in the sum of $812,029.96. In reporting the gain from the dissolution of Hazelton, taxpayer used as the basis of his stock in Hazelton the cost to him of the stock of United Filters of Delaware, a corporation (hereinafter referred to as United of Delaware).

About May 26, 1928, the taxpayer had exchanged his 5,444 8/10 shares of stock in the United of Delaware, which had cost him $358,209.56 for an equal number of shares of stock in Hazelton, a Panama corporation with its principal place of business in Montreal, Canada.

On or about March 11, 1943, the Franchise Tax Commissioner notified taxpayer that he proposed to make an additional assessment against the taxpayer of $14,208.53 tax and $3,448.26 interest or a total of $17,656.79 which was paid under protest on May 2, 1943. Taxpayer is seeking to recover this additional assessment. The statute of limitations barred taxpayer from claiming a refund on his earlier payment.

United of Delaware had for a number of years prior to 1928 engaged in the business of manufacturing filters. In 1928 consideration was given to combining the filter business of United of Delaware with the filter business of Oliver Continuous Filters Company (hereafter called Oliver). In this connection Oliver had an agreement with certain San Francisco financiers whereby the latter would buy the United of Delaware stock for $2,900,000. This was abandoned because of the anti-trust laws and not for tax considerations. Other plans were considered and abandoned because of the anti-trust laws or the tax laws.

On May 16, 1928, a corporation was formed under the laws of Nevada under the name of United Filters, Inc., hereafter referred to as United of Nevada. On May 17, 1928, United of Delaware transferred its operating assets to United of Nevada for 52,223 shares Class A common stock and 52,223 shares of Class B common stock of United of Nevada. On May 22, 1928, Hazelton was organized. On May 29, 1928, Hazelton exchanged 9,418½ shares of its common stock for 9,418½ shares of United

of Delaware (this was all but 30 shares of United of Delaware). On June 5, 1928, United of Delaware dissolved and distributed nearly all its assets (stock in United of Nevada) to Hazelton. Shareholders of Hazelton arranged to purchase 5,200 shares of Class A common and 10,000 shares of Class B common of United of Nevada for $376,575. On June 27, 1928, Hazelton sold in Canada the remaining 46,858 shares of A common and 42,058 shares of B common stock of United of Nevada for $1,964,000 to the hereinbefore mentioned San Francisco financiers.

At the time of its formation it was not contemplated that Hazelton would actively engage in the production of filters. It is specifically stipulated that if, for the purpose of the California Personal Income Tax Act of 1935, as amended in 1937, the basis for gain or loss to the taxpayer, Ernest J. Sweetland, on the dissolution of Hazelton in 1938 was the cost to taxpayer of his stock in United of Delaware (i.e. $358,209.56), the taxpayer is not entitled to recover and defendant should have judgment. It is further specifically stipulated that if for the purpose of the California Income Tax Act of 1935, as amended in 1937, the basis for gain or loss to taxpayer of taxpayer's stock in Hazelton is the fair market value of the taxpayer's stock in United of Delaware on or about May 22, 1928, taxpayer, is entitled to recover as an overpayment the amount of taxpayer's payment in 1943; to wit: $17,656.79 together with interest to November 4, 1957, if any, payable by law with respect to an overpayment made under the circumstances hereinabove set forth. There is a further stipulation waiving interest on any judgment in favor of plaintiff from November 4, 1957, until the judgment becomes final.

Section 7 (d) of the California Personal Income Tax in effect in 1938 provided as follows: "In the case of a sale or other disposition of property, the gain or loss shall be computed as provided in sections 111, 112 and 113 of the [federal] Revenue Act of 1936 which sections and the sections referred to therein are hereby referred to and incorporated with the same force and effect as though fully set forth herein; provided, however, that the words 'with the approval of the secretary' in said sections shall be deemed omitted." (Stats. 1937, ch. 668, p. 1835.)

The provisions of sections 111, 112 and 113 of the Revenue Act of 1936, so far as here relevant, are as follows:

"Sec. 111. *Determination of Amount of, and Recognition of, Gain or Loss* ...

" (c) *Recognition of gain or loss.* In the case of a sale or exchange, the extent to which the gain or loss determined under this section shall be recognized for the purposes of this title, shall be determined under the provisions of section 112. ...

"Sec. 112. *Recognition of Gain or Loss*

" (a) *General rule.* Upon the sale or exchange of property the entire amount of the gain or loss, determined under section 111, shall be recognized, except as hereinafter provided in this section.

" (b) *Exchanges solely in kind.* ...

" (3) *Stock for stock on reorganization.* No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. ...

" (g) *Definition of reorganization.* As used in this section and section 113—

" (1) The term 'reorganization' means (A) a statutory merger or consolidation, or (B) the acquisition by one corporation in exchange solely for all or a part of its voting stock: of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; or of substantially all of the properties of another corporation, or (C) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor or its stockholders or both are in control of the corporation to which the assets are transferred, or (D) a recapitalization, or (E) a mere change in identity, form, or place of organization, however effected.

" (2) The term 'a party to a reorganization' includes a corporation resulting from a reorganization and includes both corporations in the case of a reorganization resulting from the acquisition by one corporation of stock or properties of another.

"Sec. 113. *Adjusted basis for determining gain or loss*

" (a) *Basis (unadjusted) of property.* The basis of property shall be the cost of such property; except that— ...

" (6) *Tax-free exchanges generally.* If the property was acquired, after February 28, 1913, upon an exchange described in section 112 (b) to (e), inclusive, the basis (except as pro-

vided in paragraph (15) of this subsection) shall be the same as in the case of the property exchanged, decreased in the amount of any money received by the taxpayer and increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made...." (26 U.S.C.A., Act 1936, §§ 111-113, pp. 854-861.)

In *Fullerton Oil Co.* v. *Johnson,* 2 Cal.2d 162 [39 P.2d 796], the Supreme Court said: "Under the federal Income Tax Act the federal courts have established the principle that 'income' within the meaning of the Income Tax Act is *'realized gain,'* and that such *realized* gain is taxable in the year of its realization regardless of when it accrued. Thus under the federal act increases in the value of capital assets accruing subsequent to March 1, 1913, are taxable as income not in the year such increases in value occur, but in the year such increases in value are actually realized by sale or other transfer." (2 Cal.2d 162 at p. 168; emphasis added.)

"The United States Supreme Court held that such gains were taxable on the basic theory that all such accretions in value are *income* in the year of *realization* regardless of when they accrued." (2 Cal.2d 162 at p. 169.)

"As already pointed out it is *realized gain* that is taxed, and that is taxed only in the year of its realization." (2 Cal.2d 162 at p. 172.)

Similarly in *Holmes* v. *McColgan,* 17 Cal.2d 426, 428 [110 P.2d 428], under the State Personal Income Tax law of 1935 it was contended "that no part of the proceeds of these sales is income within the meaning of the act and that the increase in value of the property which accrued prior to January 1, 1935, and was realized by sale subsequent thereto, but prior to enactment of the law on June 13, 1935, cannot legally be taxed as income." The court citing *Fullerton Oil Co.* v. *Johnson, supra,* had no difficulty in sustaining the validity of the statute, saying, "The constitutional validity of such retroactive provisions is now too well established to be questioned." (P. 431.) Appellant contends, that, because there was no California income tax law in existence in 1928, and because prior to August 1928, taxpayer resided in Hazelton, Pennsylvania, it is not constitutional to levy an income tax in 1938 on gain accrued prior to the time that he became a resident of the State of California. In *Fullerton Oil Co.* v. *Johnson, supra,* at pp. 168-169, we find the following passage: "Respondent concedes that accretions to capital accruing after the

passage of the act can be properly taxed as income in the year of their fruition, but contends that accretions to value prior to date of the taxing act cannot be so taxed. We can see no constitutional difference between accretions to capital prior to the date of the taxing statute and those occurring subsequent thereto. If increases in the value of the property constitute income, and constitute income in the year in which realized rather than in the years when such increases in value accrue, it would seem that constitutionally speaking it makes no difference when such increases in value accrue—whether before or after the effective date of the taxing statute. This very point has already been decided in accordance with the above views by the United States Supreme Court.'' (Citing *Lynch* v. *Hornby,* 247 U.S. 339 [38 S.Ct. 543, 62 L.Ed 1149] ; *Helvering* v. *Canfield,* 291 U.S. 163 [54 S.Ct. 368, 78 L.Ed. 706] and *MacLaughlin* v. *Alliance Ins. Co.,* 286 U.S. 244 [52 S.Ct. 538, 76 L.Ed. 1083].) Since gains were taxable on the theory that all such accretions in value are income in the year of realization regardless of when they accrued, it follows that appellant's contention that it is unconstitutional to tax income which accrued before the taxpayer became a resident of California, but was realized after he became such a resident, is without legal foundation.

Appellants also contend that the gain on the exchange of taxpayer's stock in United of Delaware for stock in Hazelton were in fact realized at that time, and that realization was not deferred until 1938 when Hazelton was dissolved. The facts underlying the 1928 exchange are stipulated to be as follows: United of Delaware was a manufacturer of filters until May 17, 1928, when it exchanged all its operating assets for stock of United of Nevada. On May 26, 1928, the taxpayer exchanged his stock in United of Delaware for an equal number of shares of Hazelton. Hazelton acquired all but 30 shares of United of Delaware. On June 5, 1928, United of Delaware was dissolved. Hazelton never intended to engage in manufacturing filters. Seven years later the California Personal Income Tax Act of 1935 was adopted. It was amended in 1937. In 1938 Hazelton was dissolved. In 1937, *Hazelton Corp.* v. *Commissioner of Internal Revenue,* 36 U.S. Board of Tax Appeals Reports 908 held that there was a reorganization of United of Delaware and therefore no 1928 or 1929 federal income taxes were payable in this regard. The California Legislature in adopting the California Personal Income Tax Act of 1935 as amended in 1937 incorporated sections 111,

112 and 113 of the Federal Revenue Act of 1936 with the same force and effect "as though fully set forth herein." (Income Tax Act of 1935, as amended in 1937, § 7 (d).) In considering the effect of these sections we should keep in mind that it is just as though they were set out verbatim in the California act. This means that no gain shall be recognized if stock "in a corporation a party to a reorganization" is, "in pursuance of the plan of reorganization, exchanged solely for stock . . . in another corporation a party to the reorganization" (§ 112 (a),(3), *supra*) ; and "The 'reorganization' means . . . (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of another corporation; . . ." (§ 112 (g),(1), *supra*). In other words, no gain shall be recognized on taxpayer Sweetland's stock in United of Delaware, if United of Delaware is a party to a reorganization, and the stock is exchanged pursuant to the plan of reorganization for stock in another corporation (Hazelton), which is also a party to the reorganization; and the term reorganization means " (B) the acquisition by one corporation" (Hazelton), "in exchange solely for . . . at least 80 per centum of the voting stock and at least 80 per centum . . . of all other classes of stock of another corporation" (United of Delaware). Hazelton acquired 9,418½ shares of stock in United of Delaware, which was all but 30 of its shares. From the foregoing it is quite obvious that the formal requisites of a reorganization exist in the exchange of Sweetland's United of Delaware stock for stock in Hazelton; and of course that was the way it was intended to be in the planning of these moves in 1928.

Appellant contends that because there was no California income tax law in 1928 there was no law deferring the recognition of the gain on the United of Delaware stock when it was exchanged in 1928. But the law says, "the basis . . . shall be the same as in the case of the property exchanged, . . . increased in the amount of gain or decreased in the amount of loss to the taxpayer that was recognized upon such exchange under the law applicable to the year in which the exchange was made." Since there was no law applicable in 1928 no increase or decrease was recognized and therefore "the basis . . . shall be the same as in the case of the property exchanged."

In addition to the formal requisites the courts require that there be a business purpose. In *Gregory* v. *Helvering*, 293 U.S. 465 [55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355], the formal

requirements to be a reorganization under section 112 of the Revenue Act of 1928 were present, but the United States Supreme Court held that there was no business purpose but merely an attempt to avoid taxation, and therefore no reorganization within the meaning of the statute. In the instant case the disposition of the filter business and conversion of Sweetland's interest from a manufacturing to a holding company was a business purpose sufficient to satisfy the requirements of the reorganization provision of the law. (*Hazelton Corp.* v. *Commissioner of Internal Revenue,* 36 U.S. Board of Tax Appeals Reports 908.)

In this case there was a continuity of interest by the taxpayer in United of Delaware and Hazelton. The taxpayer held Hazelton for 10 years after 1928 and when Hazelton dissolved it had assets in excess of $800,000. Hazelton was a holding company. Immediately prior to the transfer United of Delaware was also a holding company. Sweetland held a majority proprietary interest in each. In *Helvering* v. *Taylor,* 293 U.S. 507 [55 S.Ct. 287, 79 L.Ed. 623] the taxpayer acquired all stock in four utility companies in 1927. He organized a holding company and on October 13, 1927, transferred to the holding company all the utility stock and received therefor all the shares of the holding company. In May of 1928 the holding company sold the stock of the four utilities. The Supreme Court in referring to the exchange of shares in the four utility companies for the shares in the holding company said, "As this transaction was 'reorganization' under Revenue Act of 1926 § 203 (b)(2), 44 Stat. 12, no taxable gain resulted." (293 U.S. 507 at p. 509.)

Since it is constitutional to tax gains in the year of realization regardless of when they accrued, and since the gain on the exchange of United of Delaware for Hazelton was in fact realized in 1938 when Hazelton was dissolved the plaintiffs are therefore not entitled to a refund.

The judgment is affirmed.

Bray, P. J., and Duniway, J., concurred.

A petition for a rehearing was denied June 14, 1961, and appellants' petition for a hearing by the Supreme Court was denied July 19, 1961.