## MILTON L. AND ARLYNE H. RAY *v.*
## DEPARTMENT OF REVENUE

Milton L. Ray, appearing in propria persona, represented plaintiffs.

Ira W. Jones, Senior Assistant Attorney General, Salem, represented defendant.

Decision on briefs for defendant rendered September 11, 1975.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appealed from the defendant's Order No. I-74-46, dated November 6, 1974, relating to their Oregon personal income tax for 1972. The order computed the plaintiffs' gain on the sale of capital stock, for Oregon personal income tax purposes, on the cost basis used for federal income taxation. The plaintiffs allege alternatively that the basis of the stock should be its fair market value on September 1, 1971, the date when plaintiffs became Oregon residents, or the fair market value of .the stock on August 1, 1969, the date used to determine gain under the Illinois Income Tax Act.

The factual aspects of this case are clear and have been stipulated by the parties. The case was submitted on briefs.

The plaintiffs purchased certain securities between 1956 and 1963 while they were residents of Illinois, at a cost (rounded for the purposes of this decision) of approximately $1 per share. They sold the shares in 1972 at an average price of $50 per share. Defendant therefore contends that plaintiffs' gain should be $49 per share. The plaintiffs became residents of Oregon on September 1, 1971, when the fair market value of the shares was $34 and plaintiffs contend that their gain should be $16 per share. Alternatively, the plaintiffs argue that August 1, 1969, the effective date of the Illinois Income Tax law, should be the proper basis for Oregon to compute the plaintiffs' capital gain. On August 1, 1969, the fair market value of the stock was $24 per share, which would give plaintiffs a gain of $26 per share.

Plaintiffs basically contend that Oregon cannot, or should not, tax the part of the economic gain in

value of the shares which the taxpayers allocate to the time prior to the date they became Oregon domiciliaries.[1]

■ The court finds that the proper basis for determining gain is cost, as provided in ORS 316.007 and 316.012, which adopts the federal definition of basis. The thrust of the statute reasonably requires this conclusion and the patent meaning of the language must be adopted by the court unless there is revealed some state or federal constitutional prohibition or some latent portent to the language used which points to a different legislative intent.

For the first cause of action, plaintiffs asserted that the proper basis for determining gain on the sale of their stock was the date that they became residents of the State of Oregon. Plaintiffs have cited no cases in point. They have provided a number of cases that suggest that the Oregon legislature either did not intend or did not have the power to adopt an income tax which uses transactions occurring prior to the effective date of the statute. These cases parallel the present case in that both the retroactive tax cases and the plaintiffs' assertion attack the power or the jurisdiction of the state to levy such a tax.

■ Plaintiffs submit that by the adoption of "taxable income" in ORS 316.022(5), Oregon accepted the federal law's distinction between income and capital and that only income and not capital is subject to an income tax. This general conclusion is correct, placing a duty on this court to determine whether the defendant is seeking to tax "capital," under the specific facts of this case.

The plaintiffs rely on *Lynch v. Turrish,* 247 US 221, 38 S Ct 537, 62 L Ed 1087, 1 USTC ¶ 18, 3 AFTR

---

[1] Although only the measure of gain is before the court, the basis date could be of equal importance to a taxpayer seeking recognition of a loss.

2986 (1918), and *Southern Pacific Co. v. Lowe,* 247 US 330, 38 S Ct 540, 62 L Ed 1142, 1 USTC ¶ 19, 3 AFTR 2989 (1918), which construed the Federal Income Tax Act of 1913. When the 1913 act was adopted, Congress chose to use the fair market value of the date of the enactment to determine the basis for calculating gain or loss for pre-1913 assets and this date is still in the federal code. Int Rev Code of 1954, § 1053, as amended. Plaintiffs assert these two cases stand for the proposition that a retroactive tax is unconstitutional. A reading of these decisions shows that the court was only construing the words of Congress and came to no conclusion as to whether it was unconstitutional to enact a so-called retroactive tax.[②]

The plaintiffs also rely on *State ex rel. Bundy v. Nygaard,* 163 Wis 307, 158 NW 87 (1916), and *Thorpe v. Mahin,* 43 Ill2d 36, 250 NE2d 633 (1969). *Bundy* involved a realtor who had purchased stock as an investment in 1907 and sold it in 1914 for a profit of $104,000. The full increase in value had occurred prior to January 1, 1911, which was the effective date of the Wisconsin Income Tax Act. The court held that the actual cost basis of the stock would be inapplicable and that the proper basis was the fair market value on the date of adoption of the new act. The decision is not convincing, for a number of reasons. It is relatively old authority which adopted the *accounting* point of view of the differences between capital and income.[③] The decision was based on the State of

---

[②] The court recognizes the difference between a truly retroactive tax and a tax presently imposed which makes use of past acts or facts in calculating the amount due. *See Fisher et al. v. City of Astoria,* 126 Or 268, 269 P 853 (1928). Both types are constitutional.

[③] *See MacLaughlin v. Alliance Ins. Co.,* 286 US 244, 249, 52 S Ct 538, 76 L Ed 1083, 3 USTC ¶ 939, 11 AFTR 8 (1932), where the court said that while unrealized increases in the value of

Wisconsin Constitution and not on any United States constitutional provisions. The one-page opinion has been justly criticized in *Fullerton Oil Co. v. Johnson*, 2 Cal2d 162, 171-172, 39 P2d 796, 800 (1934), as follows:

"* * * The difficulty with this reasoning is that it proceeds upon a misconception of what is actually taxed. As already pointed out, it is realized gain that is taxed, and that is taxed only in the year of its realization. The reasoning of the Wisconsin court would equally apply to capital gains occurring over a number of years subsequent to the passage of the taxing act and realized later."

The second state decision relied on by plaintiffs is *Thorpe v. Mahin, supra.* Illinois adopted its first income tax act in 1969 and its effective date was August 1, 1969. The act adopted is a modified federal income tax, akin to Oregon's present law. The court determined that it was the intent of the Illinois legislature not to use a post-1913 cost basis as does the federal income tax, but to use as a basis for capital gains purposes, the fair market value as of the date of the adoption of the act, or the time the asset was acquired, whichever is later. The court based its decision on two rules of statutory construction: First, statutes will not be construed retroactively unless it is clear that such was the legislative intention. Second, the court will avoid a construction that would raise doubts as to the statute's validity.

Again, *Thorpe, supra,* is not persuasive authority as to the jurisdiction and power of a state to levy a retroactive income tax. It has been noted that there

---

property could be considered capital in a bookkeeping sense, "it is nevertheless a gain from capital investment which, *when realized, by conversion into money or other property,* constitutes profit which has consistently been regarded as income within the meaning of the Sixteenth Amendment and taxable as such *in the period when realized.* * * *" (Emphasis supplied.)

may be a greater constitutional restraint upon the application of a wholly new type tax than upon the retroactive application of a provision involving an established type of tax. 1 Mertens, *Law of Federal Income Taxation* § 4.14 (1974 rev). (The Illinois legislature had great difficulty in enacting an acceptable act.) *Thorpe* is distinguishable from the instant case since Oregon, unlike Illinois, has had an income tax since 1929.

The *Thorpe* decision on the basis question rested entirely on the court's construction of the state's income tax statute and not upon any federal constitutional grounds. The court followed the usual rule that retroactivity would not be found in a statute by implication. The rules of construction used by the court reach a result which seems strained, in the face of the express language of the statute which adopted the federal income tax system and which, therefore, adopted the concept of the post-1913 cost basis. The court sought to construe against possible unconstitutionality of this statute and supported its thesis by quoting from *City Nat. Bank v. Iowa State Tax Comm.*, 251 Iowa 603, 102 NW2d 381 (1960). (Ironically, *City Nat. Bank* stands for the constitutionality of retroactive taxes.)

These weaknesses in *Thorpe, supra,* have prompted one author to refer to the decision as "superficial and misconceived." Coyne, *State Taxation of Capital Gains: Is Use of Federal Basis Constitutional?*, 24 Nat'l Tax J 521, 525 (1971).

The overwhelming weight of authority is that Congress and the state legislatures have the power to tax retroactively as long as the exercise of the power does not deny the taxpayer due process. 1 Mertens, *Law of Federal Income Taxation* § 4.14 (1974 rev), and cases cited. In 1935, one commentator noted that " 'arbitrary retroactivity' may continue * * * to rear its head in tax briefs, but for practical

purposes, in this field, it is a dead wager of law." Ballard, *Retroactive Federal Taxation,* 48 Harv L Rev 592 (1935). Indeed, in *Welch v. Henry,* 305 US 134, 146-147, 59 S Ct 121, 83 L Ed 87, 21 AFTR 973, 118 ALR 1142 (1938), the court said:

> "* * * Taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process, and to challenge the present tax it is not enough to point out that the taxable event, the receipt of income, antedated the statute."

The federal position is clear that unless surprise or some inherent unfairness to the taxpayer is shown, over and above mere retroactivity, the federal Constitution does not prohibit a retroactive tax.

States have followed the federal construction and have held that a state does have the power to tax, based on transactions occurring prior to the enactment of the taxing statute. In Oregon, *Collins v. Commission,* 3 OTR 275 (1968), stands for the proposition that the legislature has the power to tax on values accrued but not realized before the date of the adoption of an income tax. The court said, at 280:

> "The retroactive effect of the 1967 Act was not unconstitutional as impairing the obligation of contract. Credits, deductions or exemptions to or from income are matters of legislative grace and not a matter of taxpayer right. * * *"

*See also Fisher et. al. v. City of Astoria,* 126 Or 268, 269 P 853 (1928).

*Katzenberg v. Comptroller,* 263 Md 189, 282 A2d 465 (1971), and a case following it, *Marco Assoc. v. Comptroller,* 265 Md 669, 291 A2d 489 (1972), both

affirmed the right of state legislatures to tax capital gain based on values predating the adoption of the act. Maryland adopted the federal income tax system just as Oregon has done. In *Katzenberg, supra,* the taxpayer had the tax imposed on him while receiving payments on an installment contract designed to meet with federal installment contract reporting requirements. The court, in upholding the tax's constitutionality, said:

"\* \* \* It is undoubtedly true that the General Assembly, had it seen fit to do so, could have imposed a tax on a taxpayer's gross income, without considering the source from which it came, whether it be earnings, investment income or profits realized from the sale of capital assets, and without granting exemptions, allowing deductions or permitting any other adjustments. If it could validly do this, and we think it could, there is no reason to doubt that it could select some other figure, objectively arrived at, upon which the tax could be based, \* \* \*. It did this when it chose to base the tax on the figures for adjusted gross income and taxable income, as developed by the federal returns." 263 Md, at 205-206, 282 A2d, at 473.

*See also Shangri-La, Inc. v. State,* 113 NH 440, 309 A2d 285 (1973).

In summary, the court finds that the weight of authority is that retroactive basis can be used in determining taxable gain. It was the intent of the legislature, as found in ORS 316.012, to use cost basis to determine gain. The law provides that:

"Any term used in this chapter has the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter. \* \* \*"

It is therefore clear that the legislature had both the

power and the intent to tax capital gains based on purchases made prior to plaintiffs' move into the State of Oregon.

■ The plaintiffs placed great reliance on the language of ORS 316.007, which states that the legislature does not intend to tax that which is beyond its jurisdiction to tax. This savings clause cannot be considered to be anything more than a truism and the. real question must always be: "Is *this* item within the power of the state to tax?"

The plaintiffs alternatively argue that the date of enactment of the Illinois Income Tax Act, August 1, 1969, should be the basis for plaintiffs' gain on the sale of their stock. The plaintiffs assert that the Oregon legislature must have intended to respect the adjustment in basis which the Illinois court found in *Thorpe v. Mahin, supra.* It is also argued that not to recognize Illinois' basis in property would be a violation of equal protection and a burden upon the constitutional right of interstate travel, citing *Memorial Hospital v. Maricopa County,* 415 US 250, 94 S Ct 1076, 39 L Ed2d 306 (1974); *Dunn v. Blumstein,* 405 US 330, 92 S Ct 995, 31 L Ed2d 274 (1972); *Shapiro v. Thompson,* 394 US 618, 89 S Ct 1322, 22 L Ed2d 600 (1969).

■ We can find no persuasive grounds for the assertion that the Oregon legislature intended to tax, using the basis of stock as if an Oregon taxpayer were an Illinois taxpayer, no taxable act (such as a realization through a sale) having occurred in Illinois. As has already been made clear, Oregon intends to use the federal basis in determining gain. Plaintiffs had not realized gain while they were in Illinois. They did realize gain in Oregon and it is subject to being taxed in Oregon.[4]

---

[4] In construing a statute to ascertain legislative intent, a court must give consideration to the factors which favor practicality in

 The cases cited by plaintiffs have been carefully analyzed. They stand for the proposition that a state may not penalize those persons who travel interstate. However, no penalty can be shown in the instant case. The plaintiffs are incorrect in stating that Oregon residents may take advantage of a basis using fair market value on the date that the Oregon income tax law was first adopted (1929), while newer residents must be content with a post-1913 cost. Both Oregon and non-Oregon residents alike must adopt the post-1913 cost basis as adjusted by the federal income tax laws. *Patty v. Dept. of Rev.*, 5 OTR 332 (1973).

The order of the defendant is affirmed.

Defendant is awarded its costs.

---

administration of an act. Absurdities must be rejected. If plaintiffs' thesis were to be accepted, a complete history of every market fluctuation in a share's value would have to be maintained and proved by an ambulatory owner. The next step would be an attempt by states to tax unrealized gains.